FARRELL *v.* HANNAN REAL ESTATE EXCHANGE.

1. SPECIFIC PERFORMANCE—DISCRETION OF COURT.

Specific performance of contract rests in sound discretion of court, and is to be governed by peculiar circumstances of each case.

2. SAME—DEFAULT—EQUITY.

Specific performance may be decreed in favor of party in default if he has never abandoned contract, and other party has suffered nothing from default for which he cannot be compensated in decree.

3. EVIDENCE—JUDICIAL NOTICE.

Court may take judicial notice of fact that during World war and immediately thereafter real estate conditions were inactive and values decidedly slumped.

4. SPECIFIC PERFORMANCE—DEFAULT—LACHES—EQUITY.

Assignee of purchaser who was in default for more than seven years, during which time property was purchased by innocent third parties, was guilty of laches barring his right to equitable remedy of specific performance.

5. Same—Money Damages.

> Assignee of purchaser who by reason of laches is not entitled to specific performance may not be awarded money damages.

Appeal from Wayne; Carr (Leland W.), J., presiding. Submitted June 5, 1930. (Docket No. 31, Calendar No. 35,012.) Decided October 3, 1930.

Bill by Bliss M. Farrell against Hannan Real Estate Exchange, a Michigan corporation, and another, successors of the Hannan Realty Company, a former Michigan corporation, for specific performance of land contracts or damages. From a decree dismissing bill, plaintiff appeals. Affirmed.

*Henry R. MacGillis,* for plaintiff.

*Stevenson, Butzel, Eaman & Long (T. Gordon Scupholm,* of counsel), for defendant Hannan Estates Corporation.

Sharpe, J. The trial court filed the following opinion. It so fully expresses our views as to the facts, and the law applicable thereto, that we adopt it as our own:

"The plaintiff in this case is seeking the specific performance of certain land contracts executed to his assignors in the year 1915.

"For a case of this character some rather unusual features are presented. According to the showing made on behalf of the plaintiff, the last payment by him under the contracts was in the spring of 1919.

"It further appears that the defendant paid taxes for the year 1918, and that since that year, taxes have been paid by parties other than this plaintiff. In October, of 1926, approximately seven and one-half years after his last payment under the contracts, according to his own claims, the plaintiff

makes a tender to the defendant and demands a deed to the premises. It is undisputed here on the record that has been made, that in August, 1921, the defendant, assuming that the plaintiff had abandoned any and all rights that he might possess or claim by virtue of the said contracts, resold the lots in question to other parties. Some evidence has been offered here also to the effect that in August, of 1919, defendant endeavored to serve notice of forfeiture on the plaintiff, but for reasons that are not material here, actual service on the plaintiff was not had. Apparently the employee of said defendant who endeavored to make the service made a mistake as to the person, and if the notice was served at all, it was served on the wrong party.

"The general principle governing cases of this nature was laid down by Justice COOLEY, in the early case of *Smith* v. *Lawrence,* 15 Mich. 499, in language that has been frequently quoted with approval by the Supreme Court in later decisions: 'The specific performance of contracts must always rest in the sound discretion of the court; to be decreed or not as shall seem just and equitable under the peculiar circumstances of each case. It is frequently ordered in favor of a party who has been for a considerable period in default, if he has never abandoned the contract, and the other party has suffered nothing from the delay for which he cannot be compensated in the decree.'

"In the case at bar, the plaintiff undoubtedly realized when he ceased to make his payments and neglected to pay taxes on the property, that 'his rights under the contract were subject to forfeiture. He undoubtedly had in mind that if some one did not pay the taxes the property would be sold to enforce payment thereof. His lack of interest in the property during the period of time referred to is unexplained on the record; no excuse of justification for his apparent abandonment of his rights and interest under his contracts has been made here. Quite pos-

sibly the court may take judicial notice of that, which is common knowledge, namely, that in the period of war and immediately following the war, real estate conditions were rather inactive and values decidedly slumped. It is also in evidence in this case that the value of the property in question at the present time has been very greatly enhanced over and above what it was in 1918. It is significant that when the property was resold by the defendant in 1921, the selling price as set forth in the contracts of sale, was eleven hundred dollars for each lot. The only witness testifying here as to the value of these lots at the present time has expressed the opinion that each is worth approximately $140 per front foot. If his testimony is reliable, it is apparent that there has been a very great increase in value, and undoubtedly this increase in value is responsible for the reawakened interest in the plaintiff in the subject-matter of the contracts of 1915.

"The situation as it now stands is in effect: That the rights of an innocent third party have intervened; that this third party, who, according to the record, bought these lots on contract in 1921 and has since made his payments thereon, is not a party to this case. Obviously, no decree can be made that would deprive these purchasers of his or their rights.

"Without discussing the matter further, I am brought to the conclusion that the plaintiff here has been guilty of such laches as precludes granting him relief by a court of equity. The case, as I view it, follows within the rule laid down by the Supreme Court in *Smith* v. *Lawrence,* 15 Mich. 499; and *Stevens* v. *Wakeman,* 213 Mich. 559.

"Counsel for the plaintiff insists that even though specific performance is denied, that relief to the plaintiff by way of money damages should be allowed, but obviously, if the plaintiff has not made out such a case here as entitles him to consideration in a court of equity, money damages may not be properly awarded to him. Such damages are

awarded only in lieu of equitable relief, in the strict sense of the term.

"A decree will enter in the case dismissing the bill of complaint."

The decree is affirmed, with costs to appellees.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.