CHAPIN *v.* CULLIS.

1. CORPORATIONS—MEETINGS—MINUTES.
    The purpose of minutes is to transcribe into permanent and official form the actions at a meeting of the corporation.
2. SAME—SUBSCRIPTIONS—RETURN OF DEPOSIT—SUNDAY—EVIDENCE.
    In receiver's suit on a subscription agreement whereunder each of the corporation's directors was to deposit a certain sum with a

bank, which was admittedly executed at a meeting of the directors on a secular day, finding of trial court that evidence was insufficient to sustain plaintiff's burden of showing that proviso of resolution for returning to each director amount he had deposited unless every one deposited the agreed amount was an afterthought and adopted on a Sunday *held,* supported by record.

3. NEW TRIAL—INTERESTED WITNESSES.

In receiver's suit to collect under a subscription agreement among the corporation's directors, the fact that defendants were their own main witnesses and, therefore, not disinterested, would constitute no ground for granting a rehearing, especially where plaintiff's two main witnesses were large creditors.

4. SAME—AFFIDAVITS SUPPORTING MOTION FOR REHEARING—SUFFICIENCY OF SHOWING.

Denial of rehearing in receiver's suit to collect under a subscription agreement among the corporation's directors was proper where two affidavits supporting motion for rehearing were largely reiteration of former testimony, other affidavits by parties active in promoting the corporation were largely cumulative, not conclusive, affiants do not appear to have been diligently sought as witnesses, and their depositions were not taken nor delay or continuance sought because of inability to obtain their presence.

5. SAME—DISCRETION OF COURT.

The granting of a rehearing lies within the sound discretion of the trial judge.

6. COSTS—BRIEFS.

No costs are allowed appellees upon affirmance of decree dismissing bill where they failed to file a brief within the time allowed by rule (Court Rule No. 69, § 4 [1933]).

Appeal from Chippewa; Runnels (Herbert W.), J. Submitted June 4, 1941. (Docket No. 38, Calendar No. 41,113.) Decided September 2, 1941.

Bill by William S. Chapin, receiver of Rheinbrau Brewing Company, against John R. Cullis and A. Wesley Clarke, executors of the estate of Albert E. Cullis, deceased, and others to construe a subscrip-

tion agreement and for a money decree. Bill dismissed. Plaintiff appeals. Affirmed.

*Henry A. Platt,* for plaintiff.

*Warner & Sullivan,* for defendant executors.

*Leigh C. Caswell,* for defendant Holmes.

*O'Keefe & O'Keefe,* for defendant Watson.

*John N. Fegan,* for defendant Short.

BUTZEL, J. Albert E. Cullis, now deceased, whose estate is made defendant, and John W. Watson, Herman Holmes, Andrew J. Short, codefendants, and William R. Oates, Jr., were directors of the Rheinbrau Brewing Company, a corporation formed in April, 1933, with an authorized capital of $250,000, of which $1,000 was paid in. Cullis, Short, Holmes and Watson each acquired $1,500 of stock. At the time of organization, defendant William R. Oates, Sr., held an option from the First National Bank of Sault Ste. Marie, Michigan, for the purchase of the real and personal property of the Soo Brewing Company. The new corporation issued to William R. Oates, Sr., 4,250 shares of stock with par value of $10 a share for the option. It also paid the bank $5,000 in cash and gave it a $15,000 purchase mortgage for a deed to the property. Only a very small amount of stock was ever sold to others. The 4,250 shares of stock issued to Oates for the option were escrowed with the Michigan securities commission. It is unnecessary to detail the financial difficulties of the company, the reduction of its capital stock, et cetera. The company found itself unable to pay its debts or even secure necessary ma-

chinery and equipment. Mr. Warning of Detroit, as attorney for the company, was associated with Mr. McDonald of Sault Ste. Marie, who acted as local counsel and assistant secretary of the company. A meeting of the directors was held at Sault Ste. Marie on Saturday, September 16, 1933, and a resolution was passed authorizing the purchase and installation of brewery machinery and equipment at a cost of not over $45,000. Just what, if anything, transpired on Sunday, the following day, is not shown, but an agreement signed Monday, September 18, 1933, provided that Watson, Short, Cullis, and Holmes should each deposit to the credit of the company on or before September 23, 1933, the sum of $2,000, and on or before October 1, 1933, the sum of $3,000. This agreement had no binding force because of a further provision that the signers were not obligated thereby to pay such sums. Evidently there was dissatisfaction over the number of shares issued to Oates for the option, for on Tuesday, October 3, 1933, he petitioned the Michigan securities commission to allocate his 4,250 shares as follows: 1,400 shares to Holmes, Watson, Cullis, and Short, each to receive 350 shares, 600 shares to others, and the remaining 2,250 to William R. Oates, Jr. Just what, if any, action was taken is not disclosed by the record.

On Saturday, October 7, 1933, a meeting of the stockholders was held. There were present Short, Cullis, Watson, Holmes, William R. Oates, Jr., and two others. Though not listed in the minutes, Oates, Sr., also appears to have attended. Among the resolutions that were adopted one provided that all of the stock issued to William R. Oates, Sr., and not reallocated to others, with the exception of 1,250 shares, was to be turned back into the com-

pany's treasury. Another resolution provided that directors Cullis, Holmes, Watson, Short, and William R. Oates, Jr., were to deposit $5,000 each with the bank prior to October 14, 1933. This resolution, however, contained the following additional proviso (the subject of the present litigation):

"It is further agreed that this money so deposited shall be held in escrow by said bank and not to be credited to the company until and unless each of the aforesaid directors shall have deposited within the time mentioned his full quota of money as stated. If and in the event any one, or more, of said directors fails to so perform said agreement, then the money deposited by any one or more of said directors shall be returned to each of said directors."

This proviso is part of the official minutes of the stockholders' meeting held on Saturday, October 7, 1933, prepared and signed by Mr. McDonald, assistant secretary. The meeting began at 3 p.m. and continued late into the evening. The minutes show no adjournment to the following day, or a later date, nor does the record show the holding of a directors' meeting on October 7, 8, or 9, 1933, though an exhibit refers to the meeting of October 7, 1933, as one of stockholders and directors. All of the directors did not make the $5,000 deposit as stipulated in the resolution, and those that did, withdrew their deposits as permitted by the quoted proviso. The company was unable to pay its debts. The mortgage was foreclosed. Warning secured a judgment for over $2,000. McDonald had a claim of $1,000. The architects and engineers secured a large judgment. Plaintiff, who was appointed receiver, brought suit against the defendants on the claim that the agreement that each director pay in the sum of $5,000 was an absolute one, and that the proviso was adopted

at a subsequent meeting held on Sunday, October 8, 1933, a *dies non* and, therefore, the actions taken that day were of no legal effect.

Many questions are raised, others suggest themselves, but in view of the determination of the trial judge, decision hinges on one question of fact. Was the trial judge correct in holding that plaintiff did not sustain the burden of proof in his attempt to show that the proviso was an afterthought and was not adopted on Saturday, October 7, 1933, a secular day, but at a meeting on Sunday, October 8, 1933? The very purpose of minutes is to transcribe into permanent and official form the actions at a meeting of the corporation. It is true that Mr. Warning testified that the resolution was adopted at the Saturday meeting without any "proviso" and, thereupon, the meeting adjourned. He, however, testified that he was not continuously at the meeting, that he was there as legal adviser and was called in from time to time. He also testified that he saw all the defendants at a meeting at the hotel on Sunday morning, October 8, 1933, but that he only "broke into the meeting to say goodby," and no business was transacted in his presence. Mr. McDonald, the other witness, testified that the resolution without any proviso was adopted at the Saturday meeting; that the proviso was adopted at a meeting held on Sunday, the following day. He, however, testified that the directors had made up their minds "that they wouldn't put up the money unless all put up;" he thought it was talked of at the meeting of the 7th (Saturday). He also testified that he attended the meeting at the hotel on Sunday, October 8th; that he dictated the minutes on Monday, October 9th, from notes he had taken. He testified that at the Sunday meeting he did not be-

lieve Mr. Oates was there, and that he was not positive that Mr. Holmes was there.

Mr. Holmes, called as an adverse witness, testified that at the Saturday meeting the directors were willing to put up $5,000 apiece provided and only if each director did so; that he was not present at any Sunday meeting; that he checked out of the hotel at 9 a.m. after breakfast and left at once for home. Mr. Short testified that the agreement for each to put up $5,000 was conditioned upon Mr. Oates also doing so; that there was no corporate meeting on Sunday, and that had there been one he would have known of it as president of the company. Likewise, Mr. Watson testified that the subscription on October 7, 1933, was conditioned on all the directors putting up the money, and that there was no Sunday meeting. We shall not discuss further details. The judge called attention to the Sunday that intervened between the meetings on September 16 and 18, 1933, as hereinbefore referred to, that almost four years had elapsed since October 7, 1933, up to the date of the hearing in September, 1937, and that Mr. McDonald probably confused incidents of the September meetings with the one a few weeks later. The record and minutes are confusing as to William R. Oates, Sr., and William R. Oates, Jr., who seemed to have originated the enterprise. Oates, Jr., is referred to as director; Oates, Sr., is made defendant. Oates, Jr., acted as salesman of the company's stock. It is quite evident that either one or the other was to put up $5,000. Each of them expected to make a substantial gain and was disappointed that the other defendants did not put more money into the company. The judge concluded that with the positive statement in the minutes recorded at the time and the testimony of the defend-

ants, the plaintiff had not sustained the burden of proof. We agree with the trial judge.

Error is claimed because the judge refused a rehearing based on affidavits. It is claimed defendants were their own main witnesses and, therefore, not disinterested. This is also true of plaintiff's two main witnesses, who were large creditors. It constitutes no ground for rehearing.

Two of the affidavits supporting the motion consist largely of a reiteration of former testimony. The affidavits of William R. Oates, Sr., and William R. Oates, Jr., fully support plaintiff's contentions and would make it appear that neither Oates, Sr. or Jr., was to put up $5,000, but were to secure subscriptions for that amount from others, and that this was done; that the allocation of part of the escrowed stock to the other directors was the consideration for their promises. The affidavits are largely cumulative and far from conclusive. The trial judge was not satisfied that diligent efforts had been made to secure the attendance of either Oates, Sr., or Oates, Jr.; that their depositions had not been taken, nor had any delay or continuance been asked for. The judge did not abuse his discretion in denying a rehearing. *Anderson* v. *Frischkorn Real Estate Co.,* 253 Mich. 668. The granting of a rehearing lies within the sound discretion of the circuit judge. *Kirn* v. *Ioor,* 266 Mich. 335; *Union Guardian Trust Co.* v. *Lundy,* 274 Mich. 487.

The decree dismissing the bill is affirmed, but without costs, appellees not having filed any briefs within the time allowed by rule.*

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, STARR, and WIEST, JJ., concurred.

---

* See Court Rule No. 69, § 4 (1933).—REPORTER.